# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## AT CHATTANOOGA

| | | |
|---|---|---|
| DENNIS DILLARD, | ) | |
| | ) | Case Nos. 1:02-cr-167,[1] 1:07-cv-74, |
| *Petitioner,* | ) | 1:16-cv-286, 1:16-cv-460 |
| | ) | |
| v. | ) | Judge Travis R. McDonough |
| | ) | |
| UNITED STATES OF AMERICA, | ) | Magistrate Judge Susan K. Lee |
| | ) | |
| *Respondent.* | ) | |

---

## MEMORANDUM OPINION

---

On April 12, 2019, the United States Court of Appeals for the Sixth Circuit vacated this Court's order granting Petitioner Dennis Dillard relief under 28 U.S.C. § 2255 and remanded the case for further proceedings consistent with its opinion. (Doc. 146, at 12, 18.) For the reasons stated hereafter, the Court will **GRANT** Petitioner's second § 2255 petition (Doc. 108).

## I.    THE ARMED CAREER CRIMINAL ACT

This case concerns whether the Court constitutionally sentenced Petitioner under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e).

Title 18, United States Code, Section 922(g) provides that:

> It shall be unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

*Id.* § 922(g). Normally, a defendant who violates § 922(g) may be imprisoned for no more than ten years. *Id.* § 924(a)(2). However, a defendant who violates § 922(g) and has three prior

---

[1] For clarity, all citations to the docket refer to the docket of case number 1:02-cr-167.

convictions for "violent felonies" must be sentenced to a mandatory minimum of fifteen years' imprisonment. *Id.* § 924(e)(1).

As relevant here, the ACCA defines "violent felony" as a "crime punishable by imprisonment for a term exceeding one year" that "(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves the use of explosives or otherwise involves conduct that presents a serious potential risk of physical injury to another." *Id.* § 924(e)(2)(B)(i)–(ii). Subsection (i) is known as the "elements clause" or "use-of-physical-force clause." *See United States v. Smith*, 881 F.3d 954, 956 (6th Cir. 2018). Subsection (ii) includes the "enumerated-offense clause" ("is burglary, arson, or extortion, involves the use of explosives") and the "residual clause" ("or otherwise involves conduct that presents a serious potential risk of physical injury to another"). *See id.* at 956–57. In *Johnson v. United States*, 135 S. Ct. 2551 (2015), the Supreme Court held that the residual clause is unconstitutionally vague. *Id.* at 2563 ("imposing an increased sentence under the residual clause of the Armed Career Criminal Act violates the Constitution's guarantee of due process"). Therefore, for a sentence to be constitutionally enhanced under § 924(e)(1), it must be based on prior convictions that qualify as violent felonies under the enumerated-offense clause or the use-of-physical-force clause.

## II.     PROCEDURAL BACKGROUND

On June 17, 2005, Petitioner pleaded guilty to, and was subsequently convicted of, one count of possessing a firearm as a convicted felon, in violation of 18 U.S.C. § 922(g). (Doc. 47.) Based on four prior Tennessee convictions—a 1984 conviction for aggravated assault, a 1987 conviction for aggravated assault, a 1989 conviction for burglary of a business house, and a 1992 conviction for voluntary manslaughter—the United States Probation Office recommended that

Petitioner be sentenced in accordance with § 924(e) of the ACCA. (*See* Doc. 108, at 112–13, 125–26.) This Court determined that Petitioner had at least three convictions for "violent felonies" and sentenced him to 215 months' imprisonment. (Doc. 47.) Petitioner appealed, but the Sixth Circuit affirmed his conviction and sentence. (Doc. 57.)

On March 30, 2007, Petitioner filed his first petition to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255, claiming he had received ineffective assistance of counsel. (*See* Docs. 60, 60-1.) The Court denied that petition. (Docs. 71, 72.)

On June 25, 2016, Petitioner moved the Sixth Circuit for authorization to file a second § 2255 petition (Doc. 104), which was granted (Doc. 107). Petitioner based his second petition on *Johnson*. (Doc. 108, at 1.) He argued that, because his aggravated-assault convictions could have been supported by mere reckless conduct, they could not qualify as predicate offenses under the ACCA's use-of-physical-force clause. (*Id.* at 2–3.) Therefore, he reasoned, the Court must have relied on the residual clause that *Johnson* deemed unconstitutional. (*Id.* at 3.)

This Court granted the second § 2255 petition, agreeing that the aggravated-assault convictions could not qualify as predicates under the use-of-physical-force clause after *United States v. McMurray*, 653 F.3d 367, 374–75 (6th Cir. 2011) (holding a conviction based on reckless conduct could not satisfy the ACCA's use-of-physical-force clause). (Doc. 114.) The Court acknowledged the Supreme Court's decision in *Voisine v. United States*, 136 S. Ct. 2272, 2276 (2016) (holding that a reckless domestic assault qualified as a "misdemeanor crime of domestic violence" for the purposes of 18 U.S.C. § 922(g)(9)), but concluded that it was bound to follow *McMurray* until the Sixth Circuit definitively overruled it. (Doc. 114, at 19.) Without the aggravated-assault convictions, Petitioner no longer qualified as an armed career criminal. Consequently, the Court reduced Petitioner's sentence to a term of "time served." (*Id.* at 20.)

On June 20, 2017, the Government appealed. (Doc. 125.) On October 20, 2017, the

Sixth Circuit decided *United States v. Verwiebe*, 874 F.3d 258 (6th Cir. 2017), overruling

*McMurray* and clarifying that "the argument that crimes satisfied by reckless conduct

categorically do not include the 'use of physical force' simply does not hold water after

*Voisine*."[2] *Id.* at 264; (*accord* Doc. 146, at 12.) On April 12, 2019, the Sixth Circuit held that

*Verwiebe* "squarely undermin[ed]" this Court's basis for granting Petitioner relief, vacated the

Court's decision, and remanded for further proceedings. (Doc. 146, at 12.)

Because Sixth Circuit precedent now clearly holds that reckless conduct can support

designation as a violent felony under the use-of-physical-force clause, Petitioner's 1984 and

1987 aggravated-assault convictions are not disqualified as ACCA predicates merely because

they could have been supported by reckless conduct. The dispute now turns on whether either of

these aggravated-assault convictions qualifies as an ACCA predicate under the use-of-physical-

force clause.[3] If either qualifies, Petitioner has three predicate offenses and is due no relief. *See*

18 U.S.C. § 924(e)(1). However, if those convictions do not qualify, the ACCA does not apply

to Petitioner and his petition should be granted. *See id.*

## III.    STANDARD OF REVIEW

To obtain relief under 28 U.S.C. § 2255, a petitioner must demonstrate: "(1) an error of

constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of

---

[2] Although *Verwiebe* concerned a challenge to U.S.S.G. § 4B1.1 rather than a provision of the
ACCA, the Court noted that the elements clause of U.S.S.G. § 4B1.1 "mirrors an analogous
clause in the [ACCA]," and that the two are generally read the same way. *Verwiebe*, 874 F.3d at
260 (citing *United States v. Rede-Mendez*, 680 F.3d 552, 555 n.2 (6th Cir. 2012)); *see also Rede-
Mendez*, 680 F.3d at 555 n.2 ("Guideline § 4B1.2 (the career offender guideline), 18 U.S.C. § 16,
and the Armed Career Criminal Act, 18 U.S.C. § 924(e), all employ the 'use, attempted use, or
threatened use of physical force' definition of crime of violence or violent felony[.]")
[3] Aggravated assault is not an enumerated offense. (*See* Doc. 146, at 12.)

fact or law . . . so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496–97 (6th Cir. 2003)).  He "must clear a significantly higher hurdle than would exist on direct appeal" and establish a "fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998).  If the court finds that the sentence imposed was not authorized by law, it must vacate and set aside the judgment and discharge the prisoner, resentence him, grant him a new trial, or correct the sentence.  28 U.S.C. § 2255(b).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") sets forth procedures a federal prisoner must follow when seeking to file a second or successive petition under § 2255.  *See id.* §§ 2244, 2255.  Such a prisoner must "move in the appropriate court of appeals for an order authorizing the district court to consider the application." *Id.* § 2244(b)(3)(A).  These motions are to be decided by a three-judge panel of the court of appeals, and the panel is to grant or deny authorization within thirty days.  *Id.* §§ 2244(b)(3)(B), 2244(b)(3)(D).  The motion must be certified by the panel to contain either:

> (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or

> (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

*Id.* § 2255(h).  The appellate court's grant or denial of authorization is not appealable or subject to further review.  *Id.* § 2244(b)(3)(E).  However, district courts must "dismiss any claim presented in a second or successive application that the court of appeals has authorized to be filed unless the applicant shows that the claim satisfies the requirements of this section." *Id.* § 2244(b)(4).

Here, Petitioner purports to base his second § 2255 motion on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable," under § 2255(h)(2). (*See* Doc. 104, at 6, 8.) Although Petitioner sought and received authorization from the Sixth Circuit to file his second § 2255 petition, the inquiry into whether Petitioner has satisfied § 2255(h)(2) does not end there. The Sixth Circuit has held that the standard for granting authorization "is not a stiff one." *In re Embry*, 831 F.3d 377, 381 (6th Cir. 2016). A petitioner basing a second or successive petition on § 2255(h)(2) "needs only to make a 'prima facie showing' that his claim relies on a new rule of constitutional law," which is "not a difficult standard to meet." *Id.* (citations omitted). A *prima facie* showing "simply requires that the applicant make a showing of possible merit sufficient to 'warrant a fuller exploration by the district court.'" *In re Patrick*, 833 F.3d 584, 585 (6th Cir. 2016) (quoting *In re Watkins*, 810 F.3d 375, 379 (6th Cir. 2015)). The setting in which appellate courts decide whether to authorize second or successive § 2255 petitions—the lack of reviewability, the short timeframe in which to make these decisions, and the fact that the district court may "determine for itself whether the petitioner has met the gatekeeping requirements of § 2255(h)"—counsels toward granting authorization whenever a petitioner has made at least a "fair-minded argument" that his sentence should be invalidated. *Embry*, 831 F.3d at 381. These practicalities also counsel this Court to conduct a more deliberate review of whether Petitioner has satisfied § 2255(h)(2). *See id.* at 378.

## IV.   ANALYSIS

### A.  Whether Petitioner Has Satisfied the Requirements of § 2255(h)(2)

Petitioner argues his aggravated-assault convictions no longer qualify as violent felonies under the ACCA after the Supreme Court's decision in *Johnson.* (Doc. 104, at 6, 8.) In

*Johnson*, the Supreme Court did announce a new rule of constitutional law, and in *Welch v. United States*, 136 S. Ct. 1257 (2016), the Court made that rule retroactive to cases on collateral review. *Id.* at 1268; *see also Embry*, 831 F.3d at 379. Nevertheless, "*Johnson* does not reopen *all* sentences increased by the [ACCA], as it has nothing to do with enhancements under the elements clause or the enumerated-crimes clause." *Potter v. United States*, 887 F.3d 785, 787 (6th Cir. 2018) (emphasis in original). Therefore, the determination of whether a petitioner has satisfied § 2255(h)(2) and has shown that he is entitled to raise a second or successive § 2255 petition is slightly more complex in cases based on *Johnson*.

In *Potter v. United States*, the Sixth Circuit made clear that *Johnson* does not "open the door for prisoners to file successive collateral attacks any time the sentencing court *may* have relied on the residual clause." *Id.* at 788 (emphasis in original). Rather, the court held that, in order to satisfy § 2255(h)(2), a second-or-successive § 2255 petitioner must show that the district court relied *only* on the residual clause in sentencing him. *Id.* at 787. In *Potter*, the district judge who reviewed the petitioner's second § 2255 motion was the same judge who had originally sentenced him, and "[n]either the presentence report nor the sentencing transcript show[ed] that the district court relied . . . only on the residual clause." *Id.* at 788. The court of appeals affirmed the district court's denial of the petitioner's second § 2255 motion "because the same district court judge who sentenced him was in a better position than anyone else to know why he applied the [ACCA] and because at all events Potter did not meet his burden of showing that the court used the residual clause to increase his sentence." *Id.* at 786.

More recent cases have limited *Potter*'s requirement that *Johnson* petitioners demonstrate the sentencing judge relied only on the residual clause. *See Williams v. United States*, 927 F.3d

427 (6th Cir. 2019); *Raines v. United States*, 898 F.3d 680 (6th Cir. 2018). In *Raines v. United States*, the Sixth Circuit held that *Potter* only applies when:

> (1) the movant is bringing a second or successive [§ 2255] motion and (2) there is evidence that the movant was sentenced under a clause other than the residual clause, such as the sentencing judge's averment that the movant was indeed sentenced under another clause.

898 F.3d at 686. Because the petition in *Raines* was not a second or successive petition, and because there was no evidence that the sentencing judge relied on another clause, the court held that *Potter* did not apply and conducted a de novo review of whether a prior conviction qualified as an ACCA predicate. *Id.* at 686.

In *Williams*, the Sixth Circuit confirmed *Raines*'s limitation of *Potter*. *See Williams*, 927 F.3d at 439 n.7. There, the court explicitly interpreted *Raines* as limiting *Potter* "to cases in which there is affirmative evidence that the sentencing court sentenced the movant under a clause other than the residual clause." *Id.* at 439 n.7. Although the petition at issue was a successive § 2255 petition, brought under § 2255(h)(2), the court determined that there was no affirmative evidence that the sentencing court relied on another clause, so *Potter* did not apply. *Id.* However, the *Williams* court did not decide "what lesser showing a movant might be required to make where there is not affirmative evidence," because it found that the more stringent standard announced in *Potter* was satisfied (*i.e.*, that the petitioner had demonstrated that the sentencing court, more likely than not, relied only on the residual clause). *Id.*

The court, though, did explain how courts should apply *Potter*, identifying five sources of evidence courts should consider in assessing whether a particular conviction qualified as a violent felony "*only*" under the residual clause: (1) the sentencing record; (2) the legal background; (3) "informed decisionmakers"; (4) the nature of the predicate offense; and (5) later legal developments. *Id.* at 440–41.; *see also Potter*, 887 F.3d at 787. The court noted that

"*Potter*'s test can be satisfied only when there is reason to believe that the residual clause was doing more than fifty percent of the sentencing[] judge's analytical work—that is only when the residual clause was the *decisive clause* in the sentencing judge's rationale." *Williams*, 927 F.3d at 440 n.8 (emphasis in original).

The Sixth Circuit left *Potter*'s applicability to the present case for this Court to decide. (*See* Doc. 146, at 13 ("[T]o the extent the government relies on our recent holding that a *Johnson* petitioner must demonstrate that the district court relied only on the residual clause in sentencing him under the ACCA, we leave that issue for the district court's consideration in the first instance." (citing *Potter*, 887 F.3d at 787; *Raines*, 898 F.3d at 693)).)[4] The Government argues that *Potter*, *Raines*, and *Williams* are inapplicable to Petitioner's present request for relief, because they address whether Petitioner is entitled to review of his claim and the Government has not disputed that Petitioner is entitled to such review. (Doc. 160, at 1–2.) However, the language of § 2244(b)(4)—that a district court "*shall* dismiss any claim" in a second or successive petition "*unless* the applicant shows" the requirements for second or successive petitions have been satisfied—mandates the present review by this Court. 28 U.S.C. § 2244(b)(4) (emphasis added); *see also Embry*, 831 F.3d at 378.

Under *Raines* and *Williams*, *Potter*'s stricter standard does not apply to this case; although this is Petitioner's second § 2255 motion, no party has presented affirmative evidence that he was originally sentenced under the use-of-physical-force clause. *See Williams*, 927 F.3d at 439 n.7; *Raines*, 898 F.3d at 686. *Williams* clearly indicates that, when *Potter* does not apply, the burden on a petitioner advancing a *Johnson*-based § 2255 petition is lower than the burden imposed by *Potter*. 927 F.3d at 439 n.7. But, to date, no Sixth Circuit case has explained what

---

[4] At the time the Sixth Circuit issued its order in this case, *Williams* had not yet been decided.

that lesser burden entails. It is clear that any petitioner bringing a second or successive § 2255 petition is still subject to the requirements of § 2255(h). *See* 18 U.S.C. § 2255(h). Thus, a petitioner relying on § 2255(h)(2) must still identify a new, retroactive rule of constitutional law that underlies his claim for relief. *See id.* § 2255(h)(2). But because the Court finds that, as in *Williams*, Petitioner "satisfies *Potter*'s presumably tougher standard," *see* 927 F.3d at 439 n.7, the Court need not determine here what lesser standard he would otherwise need to meet.

### i. Sentencing Record

Under *Williams*, a court analyzing whether a petitioner was sentenced under the ACCA's residual clause first looks to the sentencing record. *Id.* at 441. "[T]his source is both the simplest and least helpful" in many cases because the record rarely indicates the particular clause relied on by the sentencing judge. *Id.* So it is in Petitioner's case.

At his sentencing, Petitioner did not object to the treatment of his 1987 aggravated-assault conviction as a "violent felony" for purposes of the ACCA but did object to the treatment of his 1984 aggravated-assault conviction as an ACCA predicate. (Doc. 51, at 4.) Petitioner argued that his 1984 conviction should not qualify as a violent felony because he was not the initial aggressor. (*Id.*) The Government maintained that "aggravated assault certainly qualifies as a violent felony" but did not specify under which clause. (*Id.* at 5.) The Court overruled the objection without specifying under which clause the conviction qualified as a violent felony. (*See id.* at 7.); *cf. Raines*, 898 F.3d at 686 (explaining that, before *Johnson*, there would have been no reason for a sentencing judge to specify the particular clause relied on). The Court stated only that "[s]elf-defense would be a defense to the charge" but that, "[s]ince the defendant was convicted of the offense, whether there was some self-defense aspect to it or not is beside the point for purposes of determining armed career criminal predicate offenses." (Doc. 51, at 7.)

Therefore, Petitioner cannot rely on the sentencing record to meet *Potter*'s heightened standard, because the record does not suggest whether the sentencing judge relied on the residual clause in sentencing him. *See Williams*, 927 F.3d at 441.

### ii. *Legal Background*

The Court next looks to the legal background at the time Petitioner was sentenced. *Id.* This factor indicates that Petitioner has met his burden under *Potter* and § 2255(h)(2).

In *Williams*, the Sixth Circuit compared *Potter*, 887 F.3d at 788, and *United States v. Snyder*, 871 F.3d 1122, 1129 (10th Cir. 2017), with *United States v. Taylor*, 873 F.3d 476, 482 (5th Cir. 2017). *See* 927 F.3d at 441. The court explained that, in *Snyder*, the Tenth Circuit rejected the defendant's argument under *Johnson* because Supreme Court precedent "would have left little dispute at the time of [the defendant's] sentencing that his two Wyoming burglary convictions . . . fell within the scope of the ACCA's enumerated-crimes clause." *Id.* (quoting *Snyder*, 871 F.3d at 1129) (internal quotation marks omitted). Similarly, the *Williams* court noted that, in *Potter*, the Sixth Circuit justified its decision in part by pointing to "cases from 'the time' that had identified Georgia burglary as a qualifying ACCA predicate under the enumerated-crimes clause." *Id.* (citing *Potter*, 887 F.3d at 788).

By contrast, the court pointed out that, in *Taylor*, the Fifth Circuit determined that the petitioner "*could* rely on [*Johnson*] because 'there was precedent in existence at the time of sentencing suggesting that [his] third predicate conviction could have applied only under the residual clause.'" *Id.* (quoting *Taylor*, 873 F.3d at 482). Similarly, the *Williams* court itself relied in large part on a single Sixth Circuit case that could have informed the sentencing judge's decision. *Id.* (citing *United States v. Calloway*, 189 F. App'x 486 (6th Cir. 2006)). The court concluded that *Calloway*, "at the very least suggested strongly that the residual clause was a

better justification than the elements clause" for treating the particular offense as a violent felony and ultimately determined that *Calloway*'s existence provided enough support to hold that the sentencing judge more likely than not relied on the residual clause. *Id.* at 442.

Here, Petitioner was sentenced on June 17, 2005. (*See* Doc. 51, at 1.) While some cases preceding that date treated Tennessee aggravated-assault convictions as violent felonies or crimes of violence, there was little explanation as to why, because few defendants challenged their convictions' treatment as such. *See, e.g.*, *United States v. Baxter*, 113 F.3d 1236 (6th Cir. 1997) (unpublished table decision) (defendant not disputing that his aggravated-assault conviction qualified as an ACCA predicate); *United States v. Burchard*, 60 F.3d 829 (6th Cir. 1995) (unpublished table decision) (same). Even when a court decided that such a conviction qualified as a predicate offense, it offered scant reasoning why. *See, e.g.*, *United States v. Rutledge*, 33 F.3d 671, 674 (6th Cir. 1994) (holding that Tennessee aggravated assault under a later version of the statute constituted a crime of violence without specifying under which clause); *United States v. Taylor*, 882 F.2d 1018, 1030 (6th Cir. 1989) (holding that Tennessee aggravated assault qualified as an ACCA predicate but not specifying under which clause), *abrogated on other grounds by Taylor v. United States*, 495 U.S. 575 (1990).

Although no cases prior to Petitioner's sentencing address which ACCA clause, if any, covers aggravated assault generally, a few suggest that similar offenses qualified only under the residual clause. One Sixth Circuit case, *United States v. Matthews*, 278 F.3d 560 (6th Cir. 2002), *abrogated on other grounds by Begay v. United States*, 553 U.S. 137 (2008), held that reckless aggravated assault qualified as a violent felony under the residual clause. *Id.* at 563. In *Matthews*, the defendant had a 1995 conviction for Tennessee aggravated assault. *Id.* The Sixth Circuit held that his conviction would still qualify as an ACCA predicate, even if supported by

reckless conduct, because "[r]eckless aggravated assault certainly 'presents' a serious risk of injury to its victim." *Id.* (quoting 18 U.S.C. § 924(e)(2)(B)). Thus, the court relied on the residual clause ("or otherwise involves conduct that presents a serious potential risk of physical injury to another") rather than the use-of-physical-force clause ("has as an element the use, attempted use, or threatened use of physical force against the person of another") in making this determination. *See* § 924(e)(2)(B).

In *United States v. Arnold*, 58 F.3d 1117 (6th Cir. 1995), the Sixth Circuit held that a conviction under the 1995 version of Tennessee's assault statute was not necessarily "a crime of violence involving an element of force," because the statute included "elements that do not necessarily require the use of force." *Id.* at 1122; *cf. United States v. Champion*, 248 F.3d 502, 505 (6th Cir. 2001) (citing *Arnold*, 58 F.3d at 1122) (explaining that the use-of-physical-force clause does not cover offenses for which "force is simply one conceivable means of accomplishing the offense."). In *Arnold*, the defendant had a prior conviction for assault with intent to commit sexual battery, but, because there was no Tennessee statute specific to this form of assault, the court also analyzed the conviction under the Tennessee assault statute.[5] 58 F.3d at 1122 n.4. Concluding that the offense did not necessarily involve the use of physical force, the court remanded to the district court to consider whether the offense could nonetheless be considered a crime of violence under the residual clause. *Id.* at 1124.

Precedent available in 2005 suggests that Petitioner's sentencing judge would have relied on the now-invalid residual clause. Unlike in *Snyder* and *Potter*, there is no precedent from the

---

[5] That statute, Tennessee Code Annotated § 39-13-101, defined assault "to include intentionally, recklessly, or knowingly causing injury to another; intentionally or knowingly causing another's reasonable fear of imminent bodily injury; and intentionally or knowingly causing physical contact with another person that would reasonably be considered extremely offensive or provocative." *Arnold*, 58 F.3d at 1122 n.4.

time of Petitioner's sentencing that suggests his conviction would qualify under another clause. *See Williams*, 927 F.3d at 441. Instead, as with *Taylor* and *Williams*, guiding precedent from that time suggests that the residual clause was a stronger justification than the other clauses for treating aggravated assault as a violent felony. *Id.* Thus, this factor favors Petitioner.

### iii. Informed Decisionmakers

A third source of evidence is "whether the district judge who sentenced a petitioner is the same district judge who evaluated that petitioner's § 2255 motion." *Id.* at 443. In *Potter*, the fact that the judge who denied Potter's § 2255 petition was the same judge who sentenced him carried significant weight on appeal. *See* 887 F.3d at 788.

This source of evidence is inapplicable to the present case. The undersigned is now considering Petitioner's § 2255 motion, but a different judge sentenced Petitioner in 2005. (*See* Doc. 47, at 1 (Judge Curtis Collier issuing the judgment of the Court).) Although this source of evidence does not shed any light on whether Petitioner was sentenced under the residual clause, it does distinguish Petitioner's case from *Potter*. *Cf. Williams*, 927 F.3d at 444.

### iv. Nature of the Predicate Offense

In *Williams*, the Sixth Circuit observed that "courts might reasonably treat a conviction for an ostensibly enumerated crime as allowing somewhat greater certainty about a sentencing judge's decisionmaking than would a crime at the fault line between the elements clause and the residual clause." *Id.* (citing *Holt v. United States*, 843 F.3d 720, 723 (7th Cir. 2016)). In *Potter*, the fact that the crime at issue was burglary served as additional evidence that the sentencing judge relied on the enumerated-offense clause in imposing the enhanced sentence because burglary is explicitly named as an enumerated offense. 887 F.3d at 788–89.

Here, neither party argues that Petitioner's aggravated-assault convictions qualified as violent felonies under the enumerated-offense clause. Rather, the dispute turns on whether the sentencing judge relied on the use-of-physical-force clause or only the residual clause. This factor sheds no light on whether the sentencing judge relied only on the residual clause, but it does further distinguish the present case from *Potter*. *Cf. Williams*, 927 F.3d at 444.

### *v. Later Legal Developments*

Some courts have also consulted "after-the-fact case law." *Id.* at 444. In *Potter*, the court of appeals noted that cases decided after Potter's sentencing confirmed that Georgia burglary qualified under the enumerated-crimes clause. 887 F.3d at 788. Here, later-decided cases are not particularly enlightening.

One Sixth Circuit case, *United States v. Benton*, 639 F.3d 723 (6th Cir. 2011), suggested generally that "the crime of aggravated assault has as an element the use or threat of force, and therefore qualifies as a 'violent felony' for ACCA purposes." *Id.* at 730, 730 n.3. However, it based this holding on *Matthews*, and the Sixth Circuit clarified shortly thereafter that it read the holding in *Matthews* as resting on the residual clause rather than the use-of-physical-force clause. *McMurray*, 653 F.3d at 375–76. Another later case suggests that it was clear, as late as 2008, that a conviction for aggravated assault constituted a violent felony for ACCA purposes because it qualified as such under the residual clause. *Howard v. United States*, No. 1:07-cr-082, 2012 WL 170129, at *4 (E.D. Tenn. Jan. 19, 2012) (citing *Matthews*, 278 F.3d at 563).

Cases decided since *Johnson* have held that certain variants of aggravated assault qualify as violent felonies under the use-of-physical-force clause. *See United States v. Phillips*, 768 F. App'x 474, 479–80 (6th Cir. 2019) (holding that an assault involving the use or display of a deadly weapon qualifies as a crime of violence under the use-of-physical-force clause); *Braden*

*v. United States*, 817 F.3d 926, 933 (6th Cir. 2016) (holding that an aggravated assault where the defendant intentionally or knowingly assaults another with a deadly weapon qualifies as a violent felony under the use-of-physical-force clause); *Davis v. United States*, No. 1:07-cr-10063-JDB-1, 2017 WL 3431868, at *4–6 (W.D. Tenn. Aug. 9, 2017) (noting that reckless aggravated assault did not qualify as a violent felony "whereas the intentional form does"). Nevertheless, no case holds that Tennessee aggravated-assault convictions categorically qualify as violent felonies under the use-of-physical-force clause.

After surveying all the sources of evidence, the Court finds that the balance tips in Petitioner's favor. Here, the sentencing record, the perspective of the sentencing judge, and the nature of the predicate offense have no bearing one way or the other. Additionally, no later case addresses the precise type of conviction at issue in this case, so later legal developments also do not prove helpful. The case law at the time of Petitioner's sentencing, however, suggests that the residual clause offered a better justification for treating his aggravated assault convictions as ACCA predicates than the use-of-physical-force clause. Therefore, Petitioner has demonstrated that it is more likely than not that the sentencing judge relied on the residual clause in treating his aggravated-assault convictions as ACCA predicates and has met his burden under *Potter* and § 2255(h)(2).

### B. Whether Aggravated Assault Qualifies as a Violent Felony Under the Use-of-Physical-Force Clause

Because Petitioner is entitled to bring a second petition under § 2255, the Court now considers whether he is entitled to relief on the merits.

#### i. The Categorical Approach and Divisibility

To determine whether a prior conviction qualifies as a violent felony under the ACCA, a court begins its analysis by applying the "categorical approach." *See Descamps v. United States*,

570 U.S. 254, 257 (2013). Under the categorical approach, the court "compare[s] the elements of the statute forming the basis of the defendant's conviction with the elements of the 'generic' crime—*i.e.*, the offense as commonly understood." *Id.* "The conviction qualifies as an ACCA predicate only if the statute's elements are the same as, or narrower than, those of the generic offense." *Id.* If a statute criminalizes conduct in excess of that covered by the generic offense, the court must determine whether the statute is divisible or indivisible. *See id.*

A divisible statute is one that "sets out one or more elements of the offense in the alternative," while an indivisible statute contains no such alternatives. *Id.* at 257–58; *see Mathis v. United States*, 136 S. Ct. 2243, 2249 (2016). This inquiry concerns elements, not facts. *See Mathis*, 136 S. Ct. at 2248. Elements are the "constituent parts" of a crime: "what the jury must find beyond a reasonable doubt to convict the defendant" and "what the defendant necessarily admits when he pleads guilty." *Id.* (citations and internal quotation marks omitted). Facts, on the other hand, are "circumstances or events having no legal effect or consequence" and "need neither be found by a jury nor admitted by a defendant." *Id.* (citations and internal quotations marks omitted). A statute that lists various factual means of satisfying a single element is not divisible, as a jury need not find nor a defendant admit a particular means by which the element was satisfied so long as there is acknowledgement that it was indeed satisfied. *Id.* at 2249. In determining whether a particular statute contains alternative elements or merely alternative means for satisfying the elements, a court should consider: (1) the text of the statute; (2) any state-court decisions interpreting that statute; and (3) where "state law fails to provide clear answers, . . . the record of a prior conviction"—but only for the limited purpose of distinguishing between means and elements. *Id.* at 2256–57. If a statute is divisible and one set of elements

falls within the generic offense but another does not, the court may resort to the "modified categorical approach." *Descamps*, 570 U.S. at 257.

At the time of Petitioner's first aggravated-assault conviction in 1984, the relevant Tennessee statute provided that a person commits aggravated assault when he or she:

    (1) Attempts to cause or causes serious bodily injury to another willfully, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life;

    (2) Attempts to cause or willfully or knowingly causes bodily injury to another with a deadly weapon;

    (3) Assaults another while displaying a deadly weapon or while the victim knows such person has a deadly weapon in his possession; or

    (4) Being a parent or custodian of a child or the custodian of an adult, willfully or knowingly fails or refuses to protect such child or adult from an aggravated assault described in (1), (2), or (3) above.

Tenn. Code. Ann. § 39-2-101(b) (1982). By the time of his 1987 aggravated-assault conviction, the statute had been updated to include one additional subsection:

    (5) After having been enjoined or restrained by an order, diversion or probation agreement of a court of competent jurisdiction from in any way causing or attempting to cause bodily injury or in any way committing or attempting to commit a battery against an individual or individuals, attempts to cause bodily injury or commits or attempts to commit a battery against such individual or individuals.

Tenn. Code Ann. § 39-2-101(b)(5) (1986).

The Court previously determined that Tennessee Code Annotated § 39-2-101(b) (1986) is divisible between subdivisions (1), (2), (3), (4), and (5) because each of those variants is listed in the disjunctive and juries must agree on which aggravating circumstance applies. (Doc. 114, at 6.) The Sixth Circuit affirmed this conclusion. *See Dunlap v. United States*, --- F. App'x ---, 2019 WL 3798534, at *7 (6th Cir. 2019) (holding that "[t]he Tennessee aggravated assault statute is divisible"). The parties agree that the variants described in subsections (4) and (5) do

not qualify as violent felonies under the use-of-physical-force clause of the ACCA.[6] (*See* Doc. 155, at 9; Doc. 156, at 5–6.); *see also Dunlap*, 2019 WL 3798534, at *8 ("Willfully or knowingly failing or refusing to protect a child or adult from an aggravated assault does not involve the attempted or threatened use of force as an element.").

### ii. The Modified Categorical Approach

Since the aggravated-assault statute is divisible and only the variants described in subsections (1), (2), and (3) qualify as violent felonies under the use-of-physical-force clause, the Court applies the modified categorical approach. *See Descamps*, 570 U.S. at 257.

Under the modified categorical approach, a court may consult a "limited class of documents" to determine which alternative set of elements served as the basis for the defendant's conviction. *Id.* The court then compares those elements to the elements of the generic offense to determine whether that variant of the offense qualifies as a violent felony. *Id.* The inquiry into whether a guilty plea establishes an ACCA predicate "is limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable

---

[6] Petitioner also argues that subsection (3) is overbroad because it covers assaults if the victim knows that the defendant "has a deadly weapon in his possession," and such assaults do not necessarily involve "the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i)–(ii); Tenn. Code Ann. § 39-2-101(b)(3) (1986). *Contra Clemons v. United States*, No. 2:11-cv-03140, 2017 WL 1030725, at *20 (W.D. Tenn. Mar. 15, 2017) ("One cannot violate section 39-2-101(b)(3) without using or threatening to use physical force against another."). Because the appropriate *Shepard* documents do not reveal the particular subsection under which Petitioner was convicted, *see infra* Section IV.B.iii, it makes no difference for the resolution of the case whether subsections (3), (4), and (5) do not qualify as violent felonies or whether it is only subsections (4) and (5) that do not qualify. Therefore, the Court need not consider whether subsection (3) is overbroad to decide this case.

judicial record of this information."[7] *Shepard v. United States*, 544 U.S. 13, 26 (2005). The purpose of the inquiry is only to reveal whether the plea was to a qualifying version of the offense, not to reveal the facts underlying the plea. *Descamps*, 570 U.S. at 262–63 (quoting *Shepard*, 544 U.S. at 26). The restrictions on what a sentencing court may consider ensure that defendants are not sentenced to harsher penalties without the protection of a jury verdict or guilty plea, in violation of the Sixth Amendment. *Shepard*, 544 U.S. at 25–26.

Here, the available state-court records for each of Petitioner's aggravated-assault convictions include only an indictment and a judgment. (*See* Doc. 108, at 31–36.) There are no plea agreements or factual bases. (*See id.*) The indictment for the 1984 aggravated-assault conviction charged Petitioner with "felonious assault," and the grand jurors represented that Petitioner willfully assaulted another with a deadly weapon—a knife—with the intent to murder. (Doc. 108, at 32.) The indictment for the 1987 conviction charged Petitioner with "felonious assault causing personal injury," and the grand jurors represented that Petitioner willfully assaulted another with a deadly weapon—a knife—with the intent to murder and that personal injury to the other resulted. (*Id.* at 35.) Both judgments, however, indicated only that Petitioner pleaded guilty to and was convicted of "aggravated assault." *See* (*Id.* at 33, 36.) Neither specified which variant of aggravated assault or cited the relevant statutory provisions. (*Id.*)

### iii. Reliance on the Indictments

In its previous memorandum opinion, the Court determined that, because in both cases Petitioner was charged with felonious assault but convicted of aggravated assault, he must have been convicted of violating subdivision (1), (2), or (3), because the variants in subdivisions (4)

---

[7] In the Sixth Circuit, the district court may examine state-court judgments since they fall within *Shepard*'s category of "some comparable judicial record." *United States v. Adkins*, 729 F.3d 559, 568 (6th Cir. 2013) (citing *United States v. Armstead*, 467 F.3d 943, 948 (6th Cir. 2006)).

and (5) are not lesser-included offenses of felonious assault.  (Doc. 114, at 6–7); *see State v. Rush*, 50 S.W.3d 424, 427 (Tenn. 2001) (explaining that, at trial, "the accused may be convicted only of a crime which is raised by the indictment or which is a lesser-included offense thereof").

Yet, in its opinion in this case, the Sixth Circuit reasoned that, "[b]ecause there is no requirement that a defendant who enters a *plea agreement* be convicted only of a lesser-included offense, the indictment itself does not necessarily shed any light on the actual crime of conviction."  (Doc. 146, at 14 (emphasis added).)  It held that, "because [Petitioner] pleaded guilty to crimes not charged in the indictments and no other *Shepard* documents indicate the crime of conviction, his indictments cannot be considered as *Shepard* documents under the modified categorical approach."  (*Id.* at 14, 17 ("In situations such as the one before us—where a defendant pleaded guilty to an uncharged offense and the record contains no plea colloquy, no plea agreement, and no other manner in which to connect the crime of conviction with the crime charged in the indictment—district courts applying the modified categorical approach cannot rely solely on the indictment to identify the precise crime of conviction.").)

The Government contends that the Sixth Circuit's observations are *dicta*.  (Doc. 155, at 11.)  It also argues that the panel's discussion of *Shepard* documents in Tennessee conflicts with *Davis v. United States*, 900 F.3d 733 (6th Cir. 2018).  (Doc. 155, at 12.)  In *Davis*, the Sixth Circuit considered charging documents (juvenile petitions) in deciding that prior Tennessee aggravated-assault convictions following bench trials qualified as ACCA predicates under the use-of-physical-force clause.  900 F.3d at 737.  The charging documents "clearly indicate[d]" that Davis was charged with a qualifying variant in each prosecution, both times for shooting a

victim and "causing serious bodily injury."[8]  *Id.* at 736–37.  The petitioner argued that the

charging documents were not *Shepard* documents and thus could not be considered because

"after a bench trial, the sentencing court can consider only the judge's formal rulings of law and

findings of fact."  *Id.*  The Sixth Circuit rejected that argument under *Shepard*, *Mathis*, and

*Descamps*, holding that nothing in those cases suggests that charging documents cannot be

considered when there is a bench trial resulting in a conviction.  *Id.*

The Sixth Circuit's opinion in this case is not inconsistent with *Davis*.  *Davis* dealt with

an entirely different procedural setting.  *See id.*  (petitioner arguing that charging documents

could not be considered *after a bench trial*).  Similarly, *Shepard* and *Descamps* are procedurally

distinguishable.  Both dealt with convictions based on pleas to an originally charged offense.

*See United States v. Descamps*, 466 F. App'x 563, 565 (9th Cir. 2012), *rev'd* 570 U.S. 254

(2013); *Shepard*, 544 U.S. at 16–17.  Other opinions of the Sixth Circuit are also consistent with

its opinion in this case.  *See United States v. Bernal-Aveja*, 414 F.3d 625, 628 (6th Cir. 2005)

("Because [the defendant] did not plead guilty to, and therefore was not actually convicted of the

. . . charge contained in the indictment, the indictment alone is insufficient to meet the

government's burden of proving that [the defendant] was previously convicted of a 'crime of

violence.'"); *see also United States v. Walls*, No. 18-3570, 2019 WL 2928966, at *4 (6th Cir.

July 8, 2019) (where none of the *Shepard* documents specified which subsection of the statute

---

[8] Specifically, the charging documents showed that Davis was charged under subsection (a)(1) of
the aggravated-assault statute.  *Davis*, 900 F.3d at 736.  At the time, that subsection read:

    (a)  A person commits aggravated assault who:
        (1)  Commits an assault as defined in § 39-13-101 and:
            (A) Causes serious bodily injury to another; or
            (B) Uses or displays a deadly weapon . . .

Tenn. Code Ann. § 39-13-102(a)(1) (1990); *see also Davis*, 900 F.3d at 736 n.1.

formed the basis of the conviction, it was "clear that [the defendant] was *charged* with a violent-felony ACCA predicate" but "unclear whether he *pleaded* to one").

Further, as Petitioner points out, the Court is not free to ignore the Sixth Circuit's order. (*See* Doc. 159, at 5–6.) The Sixth Circuit ordered this Court to conduct further proceedings consistent with its opinion. (Doc. 146, at 18.) Even if the Court were not so obligated, it would independently decline the Government's invitation to rely solely on the underlying state-court indictments.

### iv.  Result When Shepard Documents Do Not Indicate the Precise Crime of Conviction

Setting aside the state-court indictments, no document suggests the particular aggravated-assault subsection to which Petitioner pleaded guilty, and there is no other permissible basis for determining the relevant aggravated-assault variant. As a result, no one can show whether Petitioner was convicted of a qualifying variant of Tennessee aggravated assault or a non-qualifying one.

Faced with the impossibility of establishing whether Petitioner's convictions satisfied the ACCA, each party reverts to arguing that the other's inability to show the particular offense is favorably dispositive. (*See* Doc. 156, at 1; Doc. 160, at 4.) The Government argues that because the Petitioner bears the burden of proving that his sentence is unlawful on a § 2255 petition and because he has failed to do so and "has conceded that he cannot do so," his petition should be denied. (Doc. 160, at 4.) Petitioner, conversely, argues that "[i]n the absence of clear evidence that he in fact plead[ed] guilty to a violent felony, this Court cannot sentence him under the ACCA's 15-year mandatory minimum." (Doc. 156, at 1.) Petitioner relies on *Mathis* for the contention that "if the Court cannot determine from the *Shepard* documents alone which version the defendant plead[ed] guilty to," it must assume he pleaded to a non-qualifying version. (*Id.* at

4 (citing *Mathis*, 136 S. Ct. at 2257).)  But *Mathis* was decided on direct appeal rather than on a

§ 2255 petition.  *See* 136 S. Ct. at 2250.  There is no question that, at the time of sentencing, the

government bears the burden to show that the defendant who pleaded guilty to a prior offense

"necessarily admitted" the elements of the generic offense with regard to a potential ACCA

predicate.  *United States v. Medina-Almaguer*, 559 F.3d 420, 425 (6th Cir. 2009) (quoting

*Shepard*, 544 U.S. at 16) (holding that, where the government had not produced any evidence

that the defendant necessarily admitted the elements of the generic offense, the sentencing court

could not count his prior conviction as a predicate offense); *United States v. Rede-Mendez*, 680

F.3d 552, 560 (6th Cir. 2012) ("because the *Shepard* documents do not reveal what version of

the offense Rede-Mendez necessarily admitted to committing when he pleaded guilty, Rede-

Mendez's prior conviction does not trigger the crime of violence enhancement under U.S.S.G.

§ 2L1.2").  However, burdens at sentencing and on direct appeal are not necessarily the same as

the burden at the § 2255 stage.

At least one district court in Tennessee has extended the sentencing/direct-appeal

standard to the § 2255 context.  *See Davis v. United States*, No. 1:07-cr-10063-JDB-1, 2017 WL

3431868, at *4 (W.D. Tenn. Aug. 9, 2017); *Clemons*, 2017 WL 1030725, at *15–16.  In *Davis*,

the court determined that if "the possibility that the defendant was convicted of a variant of the

crime that does not constitute a violent felony" cannot be ruled out after evaluation of the

*Shepard* documents, the conviction cannot qualify as an ACCA predicate.  2017 WL 3431868, at

*4.  In *Clemons*, the petitioner challenged the treatment of a Tennessee attempted-robbery

conviction as a violent felony, but none of the *Shepard* documents revealed which set of

elements underlay the petitioner's conviction.  2017 WL 1030725, at *13, *15.  The court

accordingly found that his conviction could not serve as an ACCA predicate unless the elements of *both* forms qualified as such.[9]  *Id.* at *16.

Sixth Circuit jurisprudence is not particularly clear on this issue.  In *Packett v. United States*, an unpublished opinion, the Sixth Circuit rejected the petitioner's argument that "if there are no documents in the record that allow the court to determine which set of elements formed the basis of a conviction, then the offense cannot qualify as a violent felony."  738 F. App'x at 352 (observing that "[t]his argument conflates the government's burden at sentencing with the petitioner's burden on a § 2255 motion").  It held that the petitioner could "only succeed on his § 2255 motion if he shows, by a preponderance of the evidence, that his prior aggravated assault conviction is not a violent felony."  *Id.*  The court determined that the petitioner had not met his burden "because the *Shepard* documents provided by the government show[ed] that the specific class C felony that formed the basis of [the petitioner's] conviction is a violent felony."  *Id.* Specifically, the court held that, where the information confirmed that the petitioner was charged under subsection (a)(1) of the modern Tennessee aggravated-assault statute, Tenn. Code Ann. § 39-13-102 (2019), with "unlawfully and intentionally or knowingly causing another person to reasonably fear imminent bodily injury by the use of display of a deadly weapon," his conviction qualified as a violent felony under the use-of-physical-force clause.  *Id.* at 353.

More recently though, in *Williams*, the Sixth Circuit held that a conviction cannot qualify as an ACCA predicate when the *Shepard* documents do not reveal whether the petitioner was convicted of a qualifying variant or a non-qualifying one.  927 F.3d at 445 (deciding a successive

---

[9] The court ultimately determined that both versions of the offense were violent felonies and denied the petitioner's petition for § 2255 relief, but it granted a certificate of appealability on the issue because "reasonable jurists could debate whether [the] Court should have resolved the issue of attempted robbery differently."  *Id.* at *17, *21.

§ 2255 petition).  The court invoked *United States v. Burris*, 912 F.3d 386 (6th Cir. 2019), which

held that one prong of the Ohio aggravated-assault statute at issue was "a categorical mismatch"

for the use-of-physical-force clause, while the other satisfied that clause.  *Id.*; *see also Burris*,

912 F.3d at 405.  In *Burris*, the Sixth Circuit stated that "if the *Shepard* documents in a particular

case do not make clear under which subsection of the relevant statute a defendant was convicted,

*sentencing courts* must presume that the conviction rested upon nothing more than the least of

the acts criminalized" and the conviction does not qualify as a predicate offense.  912 F.3d at 406

(emphasis added).  But *Burris*, like many of the cases concerning this issue, was decided on a

direct appeal of an ACCA-enhanced sentence, not on a § 2255 petition.  *See id.* at 391.

Nevertheless, the *Williams* court applied the same reasoning and vacated the petitioner's

sentence, holding that Williams's Ohio aggravated-assault conviction could not "validly serve as

an ACCA predicate."  927 F.3d at 445.

　　　Since *Williams*, an unpublished Sixth Circuit case, *Dunlap v. United States*, has also

applied *Burris* in the § 2255 context.  *See* 2019 WL 3798534, at *8.  In *Dunlap*, the court

determined that, "[b]ecause no *Shepard* document definitively states the specific aggravated

assault provision to which Dunlap pleaded guilty, there is insufficient information about what

Dunlap 'necessarily' admitted."  *Id.* at *8.  The court then proceeded to ask "whether the offense

the statute describes, as a category, is a violent felony."  *Id.*  The court, relying on *Burris*,

ultimately determined that, "[b]ecause Dunlap could have been convicted of failing to protect a

child or adult from aggravated assault, however remote the possibility, his aggravated assault

conviction under Tennessee law is not categorically a violent felony."  *Id.*

　　　*Williams* decided and *Dunlap* confirmed that, in the context of a second § 2255 petition, a

prior conviction cannot serve as an ACCA predicate when none of the *Shepard* documents

suggests whether a petitioner was convicted under a qualifying variant or a non-qualifying one.

Although *Packett* rejected this position, *Williams* and *Dunlap* were decided after *Packett*, and

*Williams*, unlike *Packett*, is a published opinion. Here, as in *Dunlap*, because Petitioner could

have been convicted of violating subsection (4) or (5) of the Tennessee aggravated-assault

statute, "however remote the possibility," his aggravated-assault conviction cannot serve as an

ACCA predicate. 2019 WL 3798534, at *8.[10]

---

[10] Consideration of the particular burden a § 2255 petitioner bears reveals the soundness of this result. Section 2255(a) states:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that his sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). The Sixth Circuit has held that, "[t]o prevail under 28 U.S.C. § 2255, a defendant must show a fundamental defect in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." *Fair*, 157 F.3d at 430 (citations and internal quotation marks omitted).

　　*Johnson* held that it violates due process to impose a mandatory-minimum sentence under the residual clause of the ACCA, and the categorical approach serves to protect the Sixth Amendment rights of defendants facing the possibility of an ACCA-enhanced sentence. *Johnson*, 135 S. Ct. at 2563; *Descamps*, 570 U.S. at 270; *Shepard*, 544 U.S. at 25–26. For this reason, the Supreme Court has significantly limited what a district court may consider in determining whether a prior conviction qualifies as an ACCA predicate. *See Shepard*, 544 U.S. at 25–26 ("[t]he rule of reading statutes to avoid serious risks of unconstitutionality . . . counsels us to limit the scope of judicial factfinding on the disputed generic character of a prior plea").

　　In Petitioner's case, the Court could never have imposed an ACCA-enhanced sentence based on the available record without running afoul of due process and the Sixth Amendment, because the approved *Shepard* documents could never have shown, in a manner consistent with the Sixth Amendment, that Petitioner's aggravated-assault convictions were for qualifying variants of Tennessee aggravated-assault. In the absence of such proof, Petitioner's enhanced sentence was necessarily "imposed in violation of the Constitution" and "fundamental[ly] defect[ive]" to the point of injustice. *See* 28 U.S.C. § 2255(a); *Fair*, 157 F.3d at 430.

　　The Government urges the Court to require that Petitioner conclusively prove that the predicate offenses at issue were for non-qualifying variants of the aggravated-assault statute. (*See* Doc. 155, at 5–6; Doc. 160, at 2–3.) In other words, as long as Petitioner's predicate offenses "potentially" qualified under a clause other than the residual clause, Petitioner would be due no relief. (*See* Doc. 160, at 4 ("Unless and until Dillard proves that his ACCA-enhanced sentence is actually unlawful, he is not entitled to § 2255 relief.").) This approach ignores the

As other courts have acknowledged, the categorical/modified categorial approach analysis is ill-equipped to deal with cases like this one. *See Johnson v. United States*, 559 U.S. 133, 145 (2010) ("absence of records will often frustrate application of the modified categorical approach"); *United States v. Prater*, 766 F.3d 501, 512 (6th Cir. 2014) ("[r]eliance on proper *Shepard* documents alone may make this inquiry difficult or impossible"). Were the Court to find, as *Packett* suggests, that, because in the § 2255 context the burden of proof is on the petitioner, the absence of information in the *Shepard* documents would necessarily keep him from meeting his burden and defeat his petition for relief. Were that the rule, a defendant would succeed by default if he raised his arguments on direct appeal but would fail by default on a § 2255 petition. *See Medina-Almaguer*, 559 F.3d at 425 (burden is on the government at sentencing). Yet *Johnson* was not decided until after Petitioner made his direct appeal. (*See* Doc. 82, at 1.) Thus, Petitioner—and no doubt many similarly situated—would be subjected to a fifteen-year mandatory-minimum sentence without the government ever bearing the burden of showing that his prior convictions constitutionally qualify as ACCA predicates. By contrast, with respect to anyone sentenced after *Johnson*, the government would be required, at some point in the proceedings, to show that the ACCA-enhanced sentence is constitutional. That result would be inequitable and based primarily on the happenstance of the timing of a petitioner's sentencing vis-à-vis the Supreme Court's issuance of an opinion of great constitutional

---

plain language of § 2255, Sixth Circuit precedent, and the constitutional restrictions the Sixth Amendment imposes on sentencing. It is unconstitutional for a judge to sentence a defendant in a way that embraces a risk that he will be subjected to a greater mandatory-minimum punishment without a jury between him and the power of the state. *See Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000); *see also Shepard*, 544 U.S. at 25. The very existence of this acknowledged risk means Petitioner did not receive the protections the Constitution provides at sentencing. Requiring him to prove not only that such a risk was present but that it necessarily resulted in the wrong outcome is more than § 2255 requires. *See Fair*, 157 F.3d at 430.

consequence. That happenstance is a poor reason to enhance a defendant's sentence by default under the ACCA.

Further, a decision that a § 2255 petition fails when available *Shepard* documents are indeterminate would conflict with the Supreme Court's holding in *Welch* that *Johnson* is retroactive on collateral review. 136 S. Ct. at 1268. This retroactive effect would be frustrated by a rule that prejudices § 2255 petitioners who happened to have exhausted their direct appeals before the substantive change was announced. Such a rule would, for all practical purposes, prevent these petitioners from ever receiving the protections recognized in *Johnson*.

## V.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Petitioner's second § 2255 motion (Doc. 108). Because Petitioner has already served in excess of the ten-year custodial maximum applicable to him post-*Johnson*, his sentence will be **REDUCED** to a term of **TIME SERVED**. The accompanying judgment will take effect immediately, as Petitioner was already released from the custody of the Bureau of Prisons following the Court's last order granting his § 2255 motion (Doc. 114). The judgment dated June 17, 2005 (Doc. 47) will be **AMENDED** to reflect this reduced sentence and to reflect a three-year term of supervised release.

**AN AMENDED JUDGMENT WILL ENTER.**

*/s/ Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**